39 A.3d 1075                                                                                                    Page 1
304 Conn. 348, 39 A.3d 1075
**(Cite as: 304 Conn. 348, 39 A.3d 1075)**

H

Supreme Court of Connecticut.
Susan BALLOU
v.
LAW OFFICES HOWARD LEE SCHIFF, P.C.

No. SC 18639.
Argued May 18, 2011.
Decided April 10, 2012.

**Background:** Debtor sued debt collector, claiming that the collector's attempt to have interest added to an execution on a judgment violated the Fair Debt Collection Practices Act (FDCPA). The parties cross-moved for summary judgment. The United States District Court for the District of Connecticut, Mark R. Kravitz, J., 713 F.Supp.2d 79, certified a question of state law.

**Holding:** The Supreme Court, Palmer, J. held that post-judgment interest does not automatically apply to any unpaid balance under a judgment where a court has entered an installment payment order.

Question answered.

Zarella, J., filed a concurring opinion, with which McLachlan, J., joined.

West Headnotes

**Interest 219 ⚷39(3)**

219 Interest
 219III Time and Computation
  219k39 Time from Which Interest Runs in General
   219k39(3) k. Interest from date of judgment or decree. Most Cited Cases

**Interest 219 ⚷40**

219 Interest
 219III Time and Computation
  219k40 k. Statutory provisions as to time.

Most Cited Cases

Under statute providing that interest on a money judgment shall continue to accrue under any installment payment order on such portion of the judgment as remains unpaid, post-judgment interest does not automatically apply to any unpaid balance under a judgment where a court has entered an installment payment order; statute provides for interest on a money judgment, not interest on an installment payment order, and statute does not specify an interest rate that would be applicable when the court has not set a rate of interest. C.G.S.A. §§ 37–3a(a), 52–356d(e).

**\*\*1075** Joanne S. Faulkner, for the appellant (plaintiff).

Jeanine M. Dumont, with whom were Heath A. Tiberio, East Hartford, and, on the brief, Jill Alward and Thomas Leghorn**\*\*1076** , pro hac vice, for the appellee (defendant).

ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.

PALMER, J.

**\*350** The dispositive issue in this case, which comes to us upon our acceptance of two certified questions from the United States District Court for the District of Connecticut pursuant to General Statutes § 51–199b (d),[FN1] is whether General Statutes § 52–356d (e)[FN2] provides for the automatic accrual of postjudgment interest on all judgments in which an installment payment order has been entered by the court. We answer that question in the negative.

FN1. General Statutes § 51–199b (d) provides in relevant part: "The Supreme Court may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an

issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

FN2. General Statutes § 52–356d provides in relevant part: "(a) When a judgment is rendered against a natural person, the judgment creditor or judgment debtor may move the court for an order for installment payments in accordance with a money judgment. After hearing and consideration of the judgment debtor's financial circumstances, the court may order installment payments reasonably calculated to facilitate payment of the judgment.

* * *

"(c) Notwithstanding the hearing requirement of subsection (a) of this section, on motion of the judgment creditor for an order of nominal payments, the court shall issue ex parte, without hearing, an order for nominal installment payments.... Such an order for nominal payments may be modified on motion of either party....

"(d) An installment payment order shall not be enforced by contempt proceedings, but on the judgment debtor's default on payments thereon, the judgment creditor may apply for a wage execution pursuant to section 52–361a.

"(e) Interest on a money judgment shall continue to accrue under any installment payment order on such portion of the judgment as remains unpaid.

"(f) On motion of either party and after notice and hearing or pursuant to a stipulation, the court may make such modification of an installment payment order as is reasonable."

**\*351** The record certified by the District Court contains the following undisputed facts and procedural history. The plaintiff, Susan Ballou, owed balances on two different consumer credit cards. Both of these debts were purchased by Midland Funding, LLC (Midland), which subsequently brought actions on those debts in the judicial district of New Haven, Small Claims Session (small claims court). Midland obtained judgments against the plaintiff in the two cases, one in the amount of $3203.11 and the second in the amount of $997.28. The small claims court entered installment payment orders pursuant to § 52–356d requiring the plaintiff to pay $35 per week to satisfy the first judgment and $50 per month to satisfy the second judgment. The defendant, the Law Offices Howard Lee Schiff, P.C., which represented Midland in small claims court, did not apply for an order of postjudgment interest in either of the two cases, and the small claims court did not issue such an order in either case. The defendant sought a bank execution against the plaintiff for the judgment amounts and directed the marshal to add postjudgment interest of 10 percent to the amount of the judgments.

Thereafter, the plaintiff commenced an action in the United States District Court for the District of Connecticut, alleging, inter alia, that the defendant had overstated the amount of the debts in violation **\*\*1077** of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (2006),[FN3] by virtue of its application for a bank execution directing the state marshal to collect post-judgment interest even though the judgments that the small claims court rendered did not contain an award of such interest. The defendant filed a motion for summary **\*352** judgment, claiming that it had not overstated the amount of the debts because, pursuant to § 52–356d (e), postjudgment interest accrues automatically at a rate of 10 percent on any unpaid balance under a judgment for which the court has entered an installment payment order. The plaintiff also filed a motion for summary judgment, claiming that, under General Statutes § 37–3a (a),[FN4] postjudgment interest is not automatic but, rather, is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

awarded in the discretion of the court upon application of the party seeking such interest.[FN5]

> **FN3.** Under the Fair Debt Collection Practices Act, a debt collector is prohibited from engaging in unfair practices, including "[t]he false representation of ... the character, amount, or legal status of any debt"; 15 U.S.C. § 1692e (2)(A) (2006); and "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f (1) (2006).

> **FN4.** General Statutes § 37–3a (a) provides in relevant part: "Except as provided in sections 37–3b, 37–3c and 52–192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions ... including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable...."

> **FN5.** As the District Court noted in its amended certification order, in the Second Circuit, a mistake of law is not a defense under the Fair Debt Collection Practices Act. *Ballou v. Law Offices Howard Lee Schiff, P.C.,* 713 F. Sup.2d 79, 82 (D.Conn.2010); see, e.g., *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989).

The District Court subsequently determined that the proper resolution of the parties' claims turns on the correct interpretation of §§ 52–356d (e) and 37–3a (a). The District Court further observed that the question of law presented by the parties' motions involves a matter of public interest for which there is no controlling appellate decision, constitutional provision or state statute.[FN6] Accordingly, the District Court certified the following two questions of law to this court, which we accepted: "(1) Does ... § 52–356d (e) provide for the automatic accrual of [postjudgment] interest on all judgments in which an installment payment order has been entered by the court? (2) If [the first] question ... is **\*353** answered in the affirmative, what rate of [postjudgment] interest applies?" Our negative answer to the first question makes it unnecessary for us to consider the second question.

> **FN6.** At the time of the District Court's amended certification order, there was no controlling appellate decision on the issue of whether postjudgment interest automatically accrues under § 52–356d (e). As we discuss more fully hereinafter, following the District Court's amended certification order but prior to oral argument before this court, the Appellate Court issued its decision in *Discover Bank v. Mayer,* 127 Conn.App. 813, 819, 17 A.3d 80 (2011), in which the court held that postjudgment interest is discretionary for purposes of an installment payment order entered pursuant to § 52–356d (a).

The statutory language at issue in the present case is set forth in General Statutes § 52–356d (e), which provides that "[i]nterest on a money judgment shall continue to accrue under any installment payment order on such portion of the judgment as remains unpaid." In addition, § 37–3a (a) provides that a court may, in its discretion, award interest of up to 10 percent on a debt that has been reduced to **\*\*1078** a judgment but which remains unpaid. See footnote 4 of this opinion. The plaintiff maintains that there is nothing in § 52–356d to indicate that interest automatically accrues on a debt that is owed on a money judgment for which the court has entered an installment payment order. In the plaintiff's view, § 52–356d (e) merely provides that postjudgment interest that already has been awarded on a money judgment in accordance with § 37–3a *continues* to accrue on any unpaid portion of the judgment *after* the court has entered an install-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ment payment order pursuant to § 52–356d (a). The defendant asserts that § 52–356d (e) impliedly provides for the automatic accrual of postjudgment interest on the unpaid portion of a judgment when installment payments have been ordered by the court. According to the defendant, § 52–356d (e), in providing for the *continued* accrual of postjudgment interest until the debt has been paid, necessarily also requires, as a threshold matter, that such interest shall accrue in all cases in which the court has entered an installment payment order. In other words, under the defendant's interpretation of § 52–356d (e), the legislature, in mandating that interest on a money judgment "shall continue to accrue" under an installment payment order, "merely [was] emphas[izing] that postjudgment interest accrues until the payment of the judgment **\*354** amount." We agree with the plaintiff's construction of § 52–356d (e).[FN7]

> **FN7.** We note that whether § 52–356d (e) provides for the automatic accrual of postjudgment interest presents a question of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case.... In seeking to determine that meaning, General Statutes § 1–2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship

to existing legislation and common law principles governing the same general subject matter...." (Internal quotation marks omitted.) *Dept. of Public Safety v. Freedom of Information Commission,* 298 Conn. 703, 720–21, 6 A.3d 763 (2010).

The issue of statutory construction that this case raises recently was addressed by the Appellate Court in *Discover Bank v. Mayer,* 127 Conn.App. 813, 17 A.3d 80 (2011), in which the court rejected a claim that postjudgment interest is mandatory under § 52–356d (e). See id., at 818–19. In *Mayer,* the defendant, Rudolph Mayer, had entered into an agreement with the plaintiff, Discover Bank, for a credit card account. Id., at 814. Mayer incurred a substantial balance on the account but failed to make any payments, and Discover Bank commenced a collection action against Mayer. Id. In addition to money damages, Discover Bank sought, inter alia, post-judgment interest under § 37–3a. Id., at 815. The trial court denied Discover Bank's request for postjudgment interest, and Discover Bank appealed from that portion of the trial court's judgment to the Appellate Court, claiming that the plain language of § 52–356d (e) "requires that interest accrue automatically on any unpaid portion of a judgment when installment payments have been ordered by the court." Id., at 814. The Appellate Court rejected Discover Bank's claim, reasoning as follows: **\*355** "Section 52–356d (e) provides that '[i]nterest on a money judgment shall continue to accrue under any installment**\*\*1079** payment order on such portion of the judgment as remains unpaid.' [Discover Bank] contends that the legislature's use of the word 'shall' makes the accrual of interest in installment payment order cases mandatory. [Discover Bank], however, ignores that the word 'shall' is juxtaposed with the word 'continue,' and not with the word 'accrue.' [Discover Bank's] reading would have the effect of rendering the word 'continue' inoperative. The word 'continue' means to 'keep up or maintain, especially without interruption, a particular condition, course, or series of actions.' [Webster's Third New International Dic-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tionary]. The definition of the word 'continue' reveals that it presupposes, and relates in its operation, to an existing thing or condition, which in the case of § 52–356d (e), is the existence of an award of interest on a money judgment." *Discover Bank v. Mayer,* supra, at 817, 17 A.3d 80.

The Appellate Court also explained the relationship between §§ 52–356d (e) and 37–3a (a). " Section 52–356d (e) is located within chapter 906 of the General Statutes, which is titled 'Postjudgment Procedures.' In General Statutes § 52–350a (15), 'postjudgment procedure' is defined in relevant part as 'any procedure commenced after rendition of a money judgment....' 'Money judgment' is defined in relevant part as 'a judgment, order or decree of the court calling in whole or in part for the payment of a sum of money....' General Statutes § 52–350a (13). Section 52–356d (a) provides in relevant part that '[w]hen a judgment is rendered against a natural person, the judgment creditor or judgment debtor may move the court for an order for installment payments in accordance with a money judgment....' If a judgment debtor defaults on an installment payment order, the judgment creditor may apply for a wage execution. General Statutes § 52–356d (d). A 'money judgment may be enforced, by execution ... to the **356** amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) *interest as provided by chapter 673 on the money judgment* and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed pursuant to section 52–400c.' ... General Statutes § 52–350f. The relevant statute in chapter 673 is § 37–3a. Section 37–3a (a) provides in relevant part: '[I]nterest at the rate of ten per cent a year, and no more, *may be recovered* and allowed in civil actions ... as damages for the detention of money after it becomes payable.' " (Emphasis in original.) *Discover Bank v. Mayer,* supra, 127 Conn.App. at 817–18, 17 A.3d 80.

"It is apparent, therefore, that [for purposes of Discover Bank's claim under § 37–3a] the interest

referred to in § 52–356d (e) is derived from an award of interest pursuant to § 37–3a.... '[A]n award of postjudgment interest is authorized by § 37–3a ' ... and '[a] decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court.' ... Contrary to [Discover Bank's] contention, this exercise of discretion is not, in any way, circumscribed in cases [in which] installment payments have been ordered by the court. The plain language of § 52–356d (e), as well as its relationship with other statutes, makes clear that a judgment creditor may request postjudgment interest to accrue on a money judgment pursuant to § 37–3a, and that such interest, if awarded, shall continue to accrue on the unpaid portion of a money judgment in cases [in which] installment payments have been ordered by the court." (Citations omitted.) Id., at 818–19, 17 A.3d 80. We fully agree with this analysis, which is applicable to the present **1080** case. FN8

> FN8. The concurrence claims that our reliance on *Discover Bank* is misplaced because that case stands for the proposition that interest on an installment payment order may be awarded under § 37–3a *only,* and not under General Statutes § 37–1, which, in contrast to § 37–3a, provides for a mandatory award of interest. See General Statutes § 37–1(a) ("[t]he compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of an agreement to the contrary, be at the rate of eight per cent a year"). The concurrence misreads *Discover Bank,* which speaks in terms of § 37–3a, because the sole issue in that case, as in the present case, concerned the interrelationship between §§ 52–356d (e) and 37–3a (a). See *Discover Bank v. Mayer,* supra, 127 Conn.App. at 814–15, 17 A.3d 80. There is nothing in *Discover Bank* to suggest that § 37–1 is inapplicable generally to installment payment orders because § 37–1

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

simply was not implicated in that case. Indeed, the court's decision in *Discover Bank* contains no reference to § 37–1. Thus, we agree with the reasoning and holding of *Discover Bank* because the court in that case correctly analyzed the statutory provisions at issue, namely, §§ 52–356d (e) and 37–3a (a), in concluding that interest is discretionary under those specific provisions. See id., at 818–19, 17 A.3d 80.

*357 In support of its contrary position, the defendant contends that the word "continue," as used in § 52–356d (e), refers to the continued or ongoing accrual of interest until all of the required installment payments have been made and the judgment finally has been satisfied. Under this interpretation of § 52–356d (e), the legislature necessarily intended for postjudgment interest to be awarded when the court enters an installment payment order because such interest could not "continue" to accrue under § 52–356d (e) unless that interest already had been awarded by the court in connection with the installment payment order. The defendant further claims that postjudgment interest is mandatory under § 52–356d (e) because that provision states that interest "*shall* continue to accrue" on the portion of the judgment that remains unpaid. (Emphasis added.) Although acknowledging that § 52–356d is silent with respect to the rate of interest, the defendant maintains that that rate is presumptively 10 percent, which is the maximum rate allowed under § 37–3a. See footnote 4 of this opinion.

At the very least, the defendant's construction is strained because it is predicated on a reading of § 52–356d (e) that attributes to the legislature an intent to provide for a mandatory award of postjudgment interest only indirectly or impliedly. It seems highly unlikely that the legislature would have established such a mandatory *358 requirement in terms so indefinite and indirect. We also are dubious about the interpretation that the defendant urges because there is nothing in the language of § 52–356d (e) to suggest a presumptive rate of in-

terest, let alone a rate of interest of 10 percent. Even if we were to assume, however, that the defendant's interpretation of § 52–356d (e) is a plausible one, the construction that the plaintiff advances—a construction that is based on the plain import of the statutory language—is far more consonant with that language and, therefore, represents the more reasonable construction.

Our conclusion is buttressed by several other compelling considerations. First, § 52–356d (e) provides for "[i]nterest on a money judgment," not interest on an installment payment order. Each of these terms has a distinct meaning for purposes of the relevant statutory scheme, which, as we noted previously, is set forth in chapter 906 of the General Statutes. See General Statutes § 52–350a (9) and (13) (respectively defining terms "installment payment order" and "money judgment").[FN9] Although,**1081 as a practical matter, a money judgment and an installment payment order may be rendered at the same time, the statutory scheme presumes a judgment preceding an installment payment order. See General Statutes § 52–350a (15) (defining " '[p]ostjudgment procedure' " as "any procedure commenced *after rendition*359 of a money judgment, seeking or otherwise involving a* discovery procedure, a placing of a lien on property, a modification or discharge of a lien, a property execution under section 52–356a, a turnover order, *an installment payment order,* a wage execution, a modification of a wage execution, a compliance order, a protective order or a determination of exemption rights" [emphasis added] ). It is apparent, therefore, that § 52–356d (e) addresses the situation in which the court already has awarded interest on the money judgment in the exercise of its discretion under § 37–3a (a), and, thereafter, either the judgment creditor or the judgment debtor seeks and obtains an installment payment order from the court. When that occurs, § 52–356d (e) simply provides that the interest awarded on the money judgment prior to the entry of the installment payment order continues to accrue on the remaining balance on the judgment until all installment pay-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ments have been made. In light of this temporal relationship between the money judgment and the installment payment order, the reference in § 52–356d (e) to the *continuation* of the accrual of interest pertains to a preexisting order of interest on the money judgment, not to the imposition of interest triggered by the entry of an installment payment order.

FN9. General Statutes § 52–350a provides in relevant part: "For the purposes of this chapter and section 49–51, unless the context otherwise requires:

* * *

"(9) 'Installment payment order' means the fixing by the court of a sum to be paid periodically by the judgment debtor until satisfaction of a *money judgment.*

* * *

"(13) 'Money judgment' means a judgment, order or decree of the court calling in whole or in part for the payment of a sum of money, other than a family support judgment. Money judgment includes any such money judgment of a small claims session of the Superior Court...." (Emphasis added.)

In addition, when the legislature chooses to provide that interest shall be awarded as of right, it invariably uses language that expressly mandates the assessment of such interest. See, e.g., General Statutes § 5–158h (b) ( "installments shall include interest at five per cent a year"); General Statutes § 12–655(b) ("interest shall accrue ... at the rate of one per cent per month from the due date of such tax to the date of payment"); General Statutes § 17b–320 (c) ("interest at the rate of one per cent per month or fraction thereof shall accrue on such user fee from the due date of such user fee until the date of payment"); General Statutes § 25–93 **\*360** ("[delinquent assessments] shall be subject to interest from the due date at the [rate provided by statute]"). In view of the fact that an award of postjudgment interest ordinarily is a matter that falls within the sound discretion of the trial court; see General Statutes § 37–3a (a); we are disinclined to presume that the legislature intended to require an award of such interest unless that result is dictated either by the express statutory language or by necessary implication from that language. No such language appears in § 52–356d (e).

Our conclusion that postjudgment interest is not automatic under § 52–356d (e) also is bolstered by the fact that **\*\*1082** § 52–356d (e) does not specify an interest rate that would be applicable when the court has not set a rate of interest. In other statutes that authorize the imposition of interest, either as a matter of right or as a matter of discretion, the legislature has specified a rate of interest, has specified a means by which to determine a rate of interest or has incorporated by reference some other statute that establishes a rate of interest. Indeed, several statutes specifically incorporate by reference § 37–3a. See, e.g., General Statutes § 4–61(a) (involving actions against state on highway and public works contracts); General Statutes § 12–159a (a) (involving court orders in actions contesting validity of tax collector's deed); General Statutes § 31–300 (involving awards in workers' compensation cases); General Statutes § 36a–50 (b) (involving enforcement actions by banking commissioner).

Many other statutes authorize installment payments, and interest routinely is assessed under those provisions. All of those statutes, however, have two significant features that distinguish them from § 52–356d: the legislature expressly mandates the assessment of interest, and a rate of interest is specified. See, e.g., General Statutes § 5–158h (b) ("If [an] employee is financially unable to make [a] lump sum payment, the employee **\*361** and the Retirement Commission may enter into a contract for payment of such amount in not more than one hundred thirty-one equal biweekly installments. Such installments *shall include interest at five per cent a*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*year,* and the transfer to part A [of the retirement system] shall not be effective until all such installments have been paid." [Emphasis added.] ); General Statutes § 5–175b ("If [an] employee is financially unable to complete the payment of the required contributions for [service] credit prior to such date, the Retirement Commission and the employee may enter into a contract for payment of such amount in not more than fifty-two equal biweekly installments. *Such installments shall include interest at five per cent per year,* and such service credit shall not be granted unless payment of installments is completed." [Emphasis added.] ); General Statutes § 12–146 ("If any tax due in a single installment or if any installment of any tax due in two or more installments is not paid in full ... [by a specified date] on which it became due and payable, the whole or such part of such installment as is unpaid shall thereupon be delinquent and *shall be subject to interest* from the due date of such delinquent installment. Except for unpaid real estate taxes the collection of which was, or is, deferred under the provisions of section 12–174, and any predecessor and successor thereto, which unpaid real estate taxes continue to be subject to the provisions of such deferred collection statutes, the delinquent portion of the principal of any tax *shall be subject to interest at the rate of eighteen per cent per annum* from the time when it because due and payable until the same is paid...." [Emphasis added.] ); General Statutes § 12–376b (a) ("[t]he amount of tax paid in ... installments shall bear interest in relation to the unpaid portion of [the succession and transfer] tax from the expiration of six months after the death of the decedent until such tax is paid *at the rate of one *362 per cent per month or fraction thereof*" [emphasis added] ); see also General Statutes § 25–93 ("[a]ny assessment against benefited property not paid within thirty days of the due date shall thereupon be delinquent and *shall be subject to interest from the due date at the same interest rate and in the same manner as provided by the general statutes in the case of delinquent taxes, provided, in the case of an assessment payable in installments, interest shall be com-*

puted on **1083 the entire unpaid balance of such assessment from the due date of the last installment which was paid, or from the due date of the assessment if no previous installment has been paid* " [emphasis added] ). The absence of those features from § 52–356d (e) is strong evidence that the legislature did not intend to mandate interest under that statute. Indeed, it is highly unlikely that the legislature would intend for interest to accrue automatically without identifying an interest rate. Cf. General Statutes § 37–3c (providing that judgments in condemnation cases "shall include interest at a rate that is reasonable and just" and that, "[i]f a court does not set a rate of interest on the amount of compensation awarded, the interest shall be calculated [on the basis of the] ... one-year constant maturity yield of United States Treasury securities ... [and] shall accrue from the date of taking to the date of payment").

The defendant makes several arguments in support of its interpretation of § 52–356d (e), none of which is persuasive. The defendant contends that certain legislative history pertaining to § 37–3a reflects a legislative awareness that § 52–356d (e) provides for a mandatory award of postjudgment interest. In particular, the defendant refers to the 2003 testimony of Grace Rollins, a consumer advocate, before the judiciary and public health committees, concerning proposed amendments to § 37–3a. See Conn. Joint Standing Committee Hearings, Public Health, Pt. 2, 2003 Sess., pp. 495–97; Conn. *363 Joint Standing Committee Hearings, Judiciary, Pt. 6, 2003 Sess., pp. 1832–33. According to the defendant, Rollins' testimony reflects her belief that postjudgment interest is mandatory under § 52–356d (e). The defendant further asserts that, because no legislator took issue with Rollins' understanding of the import of § 52–356d (e), we must presume that those legislators shared that understanding. Although Rollins' view of the precise scope of § 52–356d (e) is by no means clear from her testimony, her view is wholly irrelevant to our construction of that provision because, contrary to the defendant's assertion, no inference possibly can

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

be drawn from the mere fact that one or more legislators who may have been present at the committee hearings greeted Rollins' testimony with silence.

The defendant further asserts that § 52–356d (e) must be interpreted to provide for the automatic accrual of interest because a contrary interpretation will result in some judgment creditors being unable to recover the full amount of their judgments for a considerable period of time without any compensation for the economic loss associated with that delay. The defendant contends that this is an untenable result that the legislature could not have intended. This argument also lacks merit. As we previously explained, the legislature, by virtue of its enactment of § 37–3a, has afforded trial courts the discretion to award postjudgment interest or to deny it. Thus, the legislature necessarily is aware that a judgment creditor will not always receive interest on the unpaid portion of a money judgment. Moreover, although the defendant asserts that postjudgment interest is more important in installment payment cases because creditors are more likely to experience a delay in collecting on the judgment, there is nothing in § 37–3a (a) or § 52–356d (e) that prevents a trial court from awarding postjudgment interest when circumstances so warrant, and the defendant candidly acknowledges **\*364** as much. Merely because the legislature has elected to require that judgment creditors seek postjudgment interest in cases involving installment payment orders does not mean that courts will not award such interest when it is appropriate to do so. Indeed, it **\*\*1084** bears noting that the defendant never sought such interest in the present case.

The defendant also claims that this court should construe § 52–356d (e) to mandate the automatic accrual of interest when a trial court orders installment payments because other jurisdictions have enacted statutes to achieve that result. As we previously explained, however, the legislature expressly has provided that, under § 37–3a (a), awards of postjudgment interest ordinarily are discretionary, and § 52–356d (e), fairly construed,

contains no exception to that general rule. But cf. General Statutes § 37–3b (a) (postjudgment interest mandatory in cases involving negligence). The fact that other jurisdictions have enacted statutes pursuant to which postjudgment interest accrues automatically at the same rate for all judgments sheds no light on the intention of our legislature, which has charted a different course.

The defendant next asserts that § 52–356d (e) must be construed to impose interest automatically on installment payments because, "[in the absence of] the payment of interest, the judgment debtor has no incentive to pay off the judgment.... In fact, there are no other consequences to a judgment debtor for failure to pay a judgment." (Citations omitted.) The defendant is incorrect. General Statutes § 52–356d (d) specifically provides that, upon "the judgment debtor's default on payments ... the judgment creditor may apply for a wage execution pursuant to section 52–361a." Indeed, after the plaintiff in the present case failed to make several installment payments, the defendant secured a bank execution for the entire amount of the judgments.

**\*365** Finally, the defendant claims that *Sears, Roebuck & Co. v. Board of Tax Review,* 241 Conn. 749, 699 A.2d 81(1997) *(Sears),* and *Suffield Development Associates Ltd. Partnership v. National Loan Investors, L.P.,* 97 Conn.App. 541, 905 A.2d 1214, cert. denied, 280 Conn. 942, 943, 912 A.2d 479 (2006) *(Suffield Development),* support its contention that § 52–356d (e) provides for mandatory postjudgment interest at a rate of 10 percent in cases in which an installment payment order has been entered. Contrary to the defendant's claim, neither case bears on the proper interpretation of § 52–356d (e). In *Sears,* this court concluded, inter alia, that § 37–3a (a) provides for a *maximum* rate of interest of 10 percent, with discretion afforded to the trial court to order interest at a lesser rate. *Sears, Roebuck & Co. v. Board of Tax Review,* supra, at 765–66, 699 A.2d 81. In *Suffield Development,* the Appellate Court merely explained that, under § 37–3a (a), an interest rate of less than 10

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

percent is presumptively valid, and therefore will be upheld, unless the party challenging the rate set by the court can demonstrate that it represents an abuse of discretion. See *Suffield Development Associates Ltd. Partnership v. National Loan Investors, L.P.,* supra, at 568–71, 905 A.2d 1214. It is apparent that these cases are irrelevant to our resolution of the present case.[FN10]

> FN10. The concurrence asserts that the present case necessarily implicates General Statutes § 37–1; see footnote 8 of this opinion; and therefore maintains that we have "not fully address[ed]" the certified questions in the present case because we have not addressed § 37–1. For this reason, and in order to "clarify that the majority opinion should not be read as altering this court's precedent concerning the application of § 37–1, which allows for parties to agree to nonusurious rates of postjudgment interest," the concurrence discusses § 37–1 at length.
>
> Because § 37–1 has no bearing on the present case, it is inappropriate to address it. As the concurrence concedes, at no time during the litigation of this matter, either in the District Court or in this court, has the defendant ever argued that § 37–1 supports its claim of entitlement to postjudgment interest under the facts of this case. Indeed, the defendant expressly alleged, as an affirmative defense to the plaintiff's claim under the federal Fair Debt Collection Practices Act, that, at all relevant times, it "has *relied* [*on* ] *§ 52–356d (e) as authority for the imposition of postjudgment interest* against a debtor who has made payments on the judgment amount under an installment payment order...." (Emphasis added.) Thus, the defendant has elected to defend against the plaintiff's action under the Fair Debt Collection Practices Act,

both as a matter of fact and as a matter of law, based solely and exclusively on its purported right to interest under § 52–356d (e), with the amount of interest to be governed by § 37–3a (a). In fact, the clarity of the defendant's position is reflected in the District Court's explanation for seeking certification. In its amended certification order, the District Court stated that it is "clear ... that this case turn[s] on an important undecided question of state law" that involves the interpretation of "§ 37–3a (a)" and "§ 52–356d." *Ballou v. Law Offices Howard Lee Schiff, P.C.,* 713 F. Sup.2d 79,80–81 (D.Conn.2010). Consistent with its claim concerning the applicability of § 52–356d (e) only, the defendant has not briefed the issue of how § 37–1 is relevant to the present case, and, consequently, the defendant has waived any claim that it conceivably might have raised under § 37–1. See, e.g., *State v. Saucier,* 283 Conn. 207, 223, 926 A.2d 633 (2007) (claim that has not been briefed generally is considered abandoned). Moreover, the defendant is a law firm specializing in creditors' rights and collection law, and we cannot imagine that a party so sophisticated in the area of law involved in this appeal would inadvertently fail to identify § 37–1 as a basis for obtaining postjudgment interest. On the contrary, we must presume that the defendant's failure even to mention § 37–1 reflects the defendant's considered view that § 37–1 provides no support for its contention that it did not violate the provisions of the Fair Debt Collection Practices Act—a presumption that is confirmed by the complete absence of any facts in the record to support a claim under § 37–1, such as an agreement by the parties concerning interest. In addition, because the parties

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

have not briefed the issue of the possible applicability of § 37–1, it would be improper for us to address that question, at least without affording the parties an opportunity to brief it. See, e.g., *Sequenzia v. Guerrieri Masonry, Inc.,* 298 Conn. 816, 821, 9 A.3d 322 (2010) ("We long have held that, in the absence of a question relating to subject matter jurisdiction, the [reviewing] [c]ourt may not reach out and decide a case before it on a basis that the parties never have raised or briefed.... To do otherwise would deprive the parties of an opportunity to present arguments regarding those issues." [Internal quotation marks omitted.] ).

Furthermore, because we do not address the applicability of § 37–1, we do not understand the asserted need of the concurrence to address § 37–1 for the purpose of "clarify[ing]" that the majority opinion "should not be read as altering this court's precedent concerning the application of § 37–1...." We do not see how our opinion possibly could be construed as altering this court's jurisprudence concerning § 37–1 in view of the fact that we expressly decline to address that provision.

Finally, it is by no means clear that an extension of credit pursuant to a credit card agreement represents the kind of loan agreement that falls within the purview of § 37–1. Indeed, the concurrence does not cite any Connecticut case that so holds. Because the present case does not implicate § 37–1, there simply is no reason to address that unresolved, and potentially thorny, issue of first impression.

In sum, we would not hesitate to exercise our authority to expand the certified question if we believed that doing so would assist the District Court in its resolution of the matter before it. For the foregoing reasons, however, we conclude that an expansion of the certified questions, as the concurrence urges, is inappropriate in this instance, both because it would serve no useful purpose and because there are compelling countervailing reasons not to do so.

**1085 *367 The answer to the first certified question is: No.[FN11]

> FN11. Because we answer the first certified question in the negative, we need not answer the second certified question.

No costs shall be taxed in this court to either party.

**1086 In this opinion ROGERS, C.J., and NORCOTT, EVELEIGH and HARPER, Js., concurred. ZARELLA, J., with whom McLACHLAN, J., joins, concurring.

I agree with the majority's conclusion that General Statutes § 37–3a does not provide for the automatic award of interest when a court enters an installment payment order pursuant to General Statutes § 52–356d. I write separately for two reasons. First, I clarify that the majority opinion should not be read as altering this court's precedent concerning the application of General Statutes § 37–1, which allows for parties to agree to nonusurious rates of postjudgment interest. Second, I express my disagreement with the majority's reliance on the reasoning and holding of *Discover Bank v. Mayer,* 127 Conn.App. 813, 17 A.3d 80 (2011), as being determinative of the issue presented by the certified questions. In particular, I am concerned that the language in *Discover Bank* on which the majority relies inaccurately portrays the operation of our interest and postjudgment procedure statutes.

I

The first certified question before this court is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

whether § 52–356d (e) provides for the automatic accrual of postjudgment interest on any judgment for *368 which an installment payment order has been entered.[FN1] As the majority correctly concludes, the answer to that question must be no. Simply put, § 52–356d (e) merely informs the parties and the court that, when a judgment is accompanied or modified by an installment payment order, it does not affect any interest accruing on the judgment.[FN2] In more practical terms, the statute requires a debtor to continue paying postjudgment interest even under an installment payment order. This response, however, does not fully address the underlying issue presented by the certified questions—when does post-judgment interest apply? The majority opinion comprehensively addresses our recent decisions concerning the nature of when interest may be awarded as damages under § 37–3a (a).[FN3] Apart from the majority's reliance *369 on *Discover Bank,* I generally **1087 agree with the majority's reasoning and conclusion. Nevertheless, I believe that an analysis of the relationship between interest and installment payment orders requires this court to address § 37–1.[FN4] As I explain in this opinion, § 37–1 and our related precedents clearly delineate certain instances in which interest attaches to, and accrues automatically on, a judgment. If a judgment with accompanying postjudgment interest under § 37–1 is subject to an installment payment order, that order does not affect the initial interest award, just as it would not affect damages in the form of postjudgment interest under § 37–3a. Simply put, it is either the parties' agreement and § 37–1, or a court's discretionary award of interest as damages, that determines whether and at what rate interest accrues on a money judgment, not any provision in § 52–356d.[FN5] Section 52–356d (e) merely informs the court and the parties that, as to installment payment orders, interest continues to accrue only on the unpaid portion of the money judgment, as diminished over time by each installment payment.

FN1. The first certified question is: "Does ... § 52–356d (e) provide for the automatic

accrual of [postjudgment] interest on all judgments [for] which an installment payment order has been entered by the court?" The second certified question is: "If [the first] question ... is answered in the affirmative, what rate of [postjudgment] interest applies?"

FN2. In that connection, I note: "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine that meaning, General Statutes § 1–2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.... The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter...." (Internal quotation marks omitted.) *Commissioner of Public Safety v. Freedom of Information Commission,* 301 Conn. 323, 338, 21 A.3d 737 (2011).

FN3. General Statutes § 37–3a (a) provides in relevant part: "[I]nterest at the rate of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ten per cent a year, and no more, may be recovered and allowed in civil actions ... *as damages* for the detention of money after it becomes payable...." (Emphasis added.)

FN4. General Statutes § 37–1 provides: "(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year; and, in computing interest, three hundred and sixty days may be considered to be a year.

"(b) Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt."

FN5. In stating this, I do not mean to foreclose the possibility that there may be instances in which a judgment creditor can obtain interest pursuant to both §§ 37–1 and 37–3a, as we apparently have not yet reached that issue.

Before proceeding, I address the majority's contention that analyzing § 37–1 exceeds the scope of our review because "at no time during the litigation of this matter, either in the [United States] District Court or in this court, has the defendant ever argued that § 37–1 supports its claim of entitlement to postjudgment **370** interest under the facts of this case." FN6 Footnote 10 of the majority opinion. I do not dispute that the defendant has relied on § 37–3a (a), but I do not agree that the **1088** certified question prevents us from clarifying the proper application of § 37–1 and its relationship to § 52–356d (e). Indeed, the first certified question is, by its own wording, open-ended. The question asks only whether § 52–356d (e) provides for interest. The simple answer, as noted previously, is no. Yet, it cannot be that the District Court would expect this court to refrain from expanding on that answer. By addressing § 37–1, I engage in the same analysis of the interplay between § 52–356d (e), our stat-

utes and precedents governing interest on judgments as the majority does in addressing § 37–3a (a). I fail to understand how answering the question presented by the District Court, on a matter of statutory interpretation over which we exercise plenary **371** review, constitutes an "expansion of the certified questions ... serv[ing] no useful purpose...." FN7 Id.

FN6. On the basis of the record provided to this court in this case, the majority limits its statutory analysis to § 37–3a (a). This court, however, is not limited to the factual record when reviewing a pure issue of statutory construction of Connecticut law presented by a federal court. See, e.g., *Board of Education v. St. Paul Fire & Marine Ins. Co.,* 261 Conn. 37, 41 n. 3, 801 A.2d 752 (2002) ("We point out [in deciding the certified question] that the issue of whether the bus driver was in fact negligent ultimately will be decided by the trier of fact. [Thus] [o]ur analysis is based on the allegations of the ... complaint [in a separate case seeking to recover damages from the bus driver's employer] and not on the likelihood that the [plaintiffs in that separate case] will prevail at trial."); *Perodeau v. Hartford,* 259 Conn. 729, 734–63, 792 A.2d 752 (2002) (answering pure questions of law without regard to underlying facts of case before United States District Court); *C.R. Klewin, Inc. v. Flagship Properties, Inc.,* 220 Conn. 569, 579–84 and n. 8, 600 A.2d 772 (1991) (deciding certified questions with extensive analysis of common law, and noting, without expressing opinion on, fact that "one of the issues before the Second Circuit was whether there was a genuine issue of material fact as to whether the oral agreement [at issue] could have been performed within a year"); see also *Teresa T. v. Ragaglia,* 272 Conn. 734, 742, 865 A.2d 428 (2005) ("[i]ssues of statutory construc-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion present questions of law, over which we exercise plenary review"). Significantly, although the District Court has provided this court with a stipulation of certain facts that it believes are relevant to the certified questions, as well as a limited record of the prior proceedings, the District Court has not asked us to apply our law to the facts of the underlying case.

FN7. A review of the purpose of answering certified questions of Connecticut law presented by a federal court is additionally helpful in this regard. When a federal court must decide an issue based on an area of Connecticut law for which there is no clear precedent, that court may certify a question to this court in order to understand the proper application of our law. See General Statutes § 51–199b (d) ("[t]he Supreme Court may answer a question of law certified to it by a court of the United States or by the highest court of another state or of a tribe, *if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state* " [emphasis added] ). Indeed, the Court of Appeals for the Second Circuit, in which the United States District Court for the District of Connecticut sits, has expressly stated that, in certifying questions of law to this court, this court should not be constrained by the formulation of the question, but rather should address any and all issues presented by the certified question. *Arrowood Indemnity Co. v. King,* 605 F.3d 62, 65, 80 (2d Cir.2010) ("We conclude that this case requires us to resolve significant questions concerning the appropriate construction of the relevant policy language, involving interpretation of Connecticut insurance law and implicating public policy considerations for Connecticut. For these reasons

and those that follow, we certify ... several questions to the Supreme Court of Connecticut.... *In formulating the questions for certification as we have, we do not mean to limit the Connecticut Supreme Court's response. The certified questions may be expanded to cover any further pertinent questions of Connecticut law that the Supreme Court deems appropriate to answer in connection with these issues. The Connecticut Supreme Court's guidance is welcomed on any state law issues presented by this appeal.*" [Emphasis added.] ).

The scope of our analysis of Connecticut law is particularly important in this case, in which the underlying complaint in federal court arises out of a claim under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. In such a claim, the exact nature of the debt, including the amount of interest, if any, owed thereon, may be dispositive of the outcome. In order for the District Court to properly adjudicate these claims, which may, in some cases, involve a determination of whether the debt continued to accrue interest pursuant to an agreement, a complete and thorough analysis of all relevant areas of Connecticut law on interest and judgments is necessary. See 15 U.S.C. § 1692f (2006) ("[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: [1] [t]he collection of any amount [*including any interest,* fee, charge, or expense incidental to the principal obligation] *unless such amount is expressly authorized by the agreement creating the debt or permitted by law* " [emphasis added] ). Again, I reiterate that, because the de-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

fendant has not relied on § 37–1 during the litigation of this matter, it is unlikely that the statute is applicable in this case. The foregoing reasoning, however, demonstrates the importance of providing the District Court with a clear analysis of the operation of our statutes governing interest. My goal, as I stated at the outset of this opinion, is to ensure that the District Court fully understands, in this case and in future cases, the interplay between our laws on interest and postjudgment procedures.

Finally, I note that, although the defendant did not address § 37–1, the plaintiff's attorney, pursuant to Practice Book § 67–10, filed a supplemental letter with this court, on September 19, 2011, specifically citing *Little v. United National Investors Corp.,* 160 Conn. 534, 537, 280 A.2d 890 (1971), as providing additional legislative history on postjudgment interest in Connecticut under both §§ 37–1 and 37–3a.

**\*\*1089** In sum, I address § 37–1 to offer a complete analysis of all statutes relevant to the certified questions presented**\*372** by the District Court's amended certification order: "[T]he [District] Court departs from its preferred practice in this case for three reasons [and certifies a question of law to the Connecticut Supreme Court notwithstanding a disagreement between the parties over the issue presented]. First, despite the parties' inability to cooperate, there is essentially no disagreement about the underlying facts of this case. Second, the questions raised by the parties' [summary judgment] motions are important *and potentially affect thousands of cases pending in and already decided by Connecticut courts.*[FN8] In each of those cases, collectors seeking to collect interest on court judgments could face liability under the [federal Fair Debt Collection Practices Act (act), 15 U.S.C. § 1692 et seq.] if the court [in each case

had] entered an installment payment order. Third, the [District Court is confident that if it were to decide this issue itself and the losing party were to take an appeal, the Second Circuit would certify the questions in this case to the Connecticut Supreme Court." **\*373** Emphasis added.) *Ballou v. Law Offices Howard Lee Schiff, P.C.,* 713 F. Sup.2d 79, 80 (D.Conn.2010); see also id., at 82 ("[b]efore this [c]ourt holds that every collector who added interest to a judgment to be paid in installments is in violation of Connecticut law, and thus the [act] if within the one-year statute of limitations, the [c]ourt seeks to clarify this unsettled question of Connecticut law by certifying it to the Connecticut Supreme Court"). Accordingly, I find it necessary to address certain additional issues of law and statutory construction.

> FN8. This statement particularly evinces the District Court's expectation of an analysis that is broad in scope, signaling to this court that we should not limit our response to the narrow question presented if doing so would leave related issues unanswered. Indeed, when viewed through the lens of judicial economy, it becomes even more crucial to provide a thorough analysis of the law. Federal courts in Connecticut will certainly face other legally similar, though not necessarily factually similar, claims raised under the act. The analysis herein provides the federal courts in Connecticut with additional tools to resolve future disputes under the act that implicate Connecticut law on interest and judgments.

A brief review of our decisions regarding interest, damages and judgments is necessary to shed additional light on the issues presented by the certified questions. For more than 200 years, Connecticut has allowed parties to include nonusurious interest in contracts. See, e.g., *Selleck v. French,* 1 Conn. 32, 33 (1814) ("[i]nterest by our law is allowed on the ground of some contract express or

implied to pay it, or as damage for the breach of some contract, or the violation of some duty"). Although usury laws limited the maximum rate of interest, parties were otherwise free to set interest rates among themselves. See, e.g., *Little v. United National Investors Corp.,* 160 Conn. 534, 537, 280 A.2d 890 (1971) ("the General Assembly [has] recognized the right of the parties to agree on interest rates, subject to the limitations imposed by the usury statutes"). For agreements that contemplate interest but do not specify an interest rate, the legislature long has provided for a legal rate of interest. General Statutes § 37–1; see, e.g., *Hubbard v. Callahan,* 42 Conn. 524, 527 (1875) ("[i]f no rate of interest is specified, [6 percent] is the legal rate; but **1090 if the parties agree [on] the rate in writing, then the agreed [on] rate becomes the legal rate in that case"). For example, in *Hubbard,* the court determined the validity of a contract providing for interest at a rate of 15 percent after maturity of the promissory note. See *374 id. The court, faced with the issue of whether parties could contract to set interest after maturity at a rate greater than the legal rate, responded: "Why not? If we may take the language of the statute [governing the legal rate of interest] in its common acceptation, no one would entertain a doubt that the parties could contract for a rate of interest after the money is due and while it remains unpaid, as well as before. There is no exception, qualification or limitation in the statute." Id. We have reiterated this general proposition on various occasions since *Hubbard;* see, e.g., *Little v. United National Investors Corp.,* supra, at 537–38, 280 A.2d 890; *Globe Investment Co. v. Barta,* 107 Conn. 276, 279–80, 140 A. 202 (1928); and there has been no legislative response to the contrary. Indeed, the current embodiment of this rule is manifest in § 37–1, which has endured largely unchanged from previous versions of the statute.

"The language of [the] predecessor statutes [to § 37–1] and the construction placed on them by this court confirms the clearly expressed intention of the legislature in the enactment of these statutes. As distinguished from prohibitions against usury, the legal rate of interest appears to have been first set in chapter 16 of the Public Acts of 1872. [The statute] provided: 'When there is no agreement for a different rate of interest of money, the same shall be at the rate of six dollars [on] one hundred dollars'. In 1874 this statute was amended solely to change the rate from 6 percent to 7 percent. Public Acts 1874, c. 108. In 1877, the rate was changed back to 6 percent and the language was altered to [provide]: 'The compensation for [the] forbearance of property loaned at a fixed valuation, or for money, shall in the absence of any agreement to the contrary be at the rate of six per cent a year'. Public Acts 1877, c. 151. This provision has continued without change and is the present § 37–1[a] of the General Statutes defining 'legal interest'." *375 *Little v. United National Investors Corp.,* supra, 160 Conn. at 538, 280 A.2d 890. Since *Little* was decided, the legislature has amended the legal rate of interest under § 37–1, raising the rate to the current rate of 8 percent in 1979. Public Acts 1979, No. 79–364, § 1.

In addition to allowing prematurity and postmaturity interest on agreements to loan property or money, "Connecticut has ... long provided for interest on judgments.... [T]he common-law impediment to interest on judgments does not exist in Connecticut. The common-law principle was predicated on the theory that the note or contract [that] was the subject of [the action] merged in the judgment and technically there could be no agreement concerning the judgment.... [General Statutes (Rev. to 1968) § 52–349, however] expressly provides for legal interest on judgments and § 37–1 expressly provides [for a] legal rate of interest ... 'in the absence of any agreement to the contrary.' ... Implicit in § 37–1 is the provision that if the parties have agreed on a rate of interest not prohibited by the usury law then that rate is the legal rate and only in the absence of such an agreement is it [the legal rate established by § 37–1]." (Citation omitted.) *Little v. United National Investors Corp.,* supra, 160 Conn. at 537–38, 280 A.2d 890.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

In *Little,* the court considered the aforementioned statutes and precedents, and concluded that, "since the agreement of the defendant [judgment debtor] was that **1091 'interest shall accrue at the rate of [9 percent] per annum on unpaid principal balances, before and after maturity, by acceleration or otherwise' the rate of 'legal interest' was thus fixed by the agreement of the parties and under the provisions of General Statutes [ Rev. to 1968) §] 52–349 FN9 and [ §] 37–1 the plaintiffs were entitled to *376 interest on the judgment at that rate." (Emphasis added.) *Id., at 542, 280 A.2d 890.*

FN9. General Statutes (Rev. to 1968) § 52–349 has since been repealed; however, General Statutes § 52–350f, which I discuss in detail in part III of this opinion, is substantively similar in that both statutes allow judgments to be enforced with interest.

This result has since been codified by the legislature, which resolved any potentially lingering ambiguities. Following *Little,* § 37–1 was amended by adding subsection (b); see Public Acts 1971, No. 783, § 1; which specifically provides: "Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt." General Statutes § 37–1(b). Thus, when viewed through the proper lens of relevant precedent and predecessor statutes, the current version of § 37–1 embodies two basic principles long espoused by this court and the legislature. First, parties may always contract to provide any nonusurious rate of interest as compensation for the forbearance of property or money, which may accrue before and after the date of maturity, including any postjudgment period. Second, if the agreement contemplates interest, explicitly or implicitly, but the parties fail to define a rate, § 37–1 provides the legal rate of interest, currently at 8 percent, which may accrue before and after the date of maturity.

II
Separate and distinct from interest pursuant to

agreements are awards of damages for the wrongful detention of money, which the majority addresses in its analysis of § 37–3a. In addition to the majority's analysis, the following discussion serves to explain the difference between our interest and damages statutes.

In *Beckwith v. Trustees of Hartford, Providence & Fishkill Railroad,* 29 Conn. 268 (1860), we stated that "interest can only be claimed under a contract to pay it, either express or implied"; id., at 270; and, in an action to recover money wrongfully detained by another, "the sum recoverable for such detention is treated as damages for the breach of the contract, rather than interest *377 for the money loaned...." *Id.* Some fifteen years after *Beckwith* and a change in the relevant statutes relating to interest on debts and judgments, we further outlined the distinction between actions to recover interest and those to recover damages on debts past due: "[I]nterest may be recovered [on] the arrears of interest due, if there is an express promise to pay such interest....

"In these cases it is called interest and not damages. But there are cases [in which] interest is allowed 'by way of,' or 'in the nature of' damages.

* * *

"This rule of allowing interest as damages originated in the desire of the courts to adhere to certain technical rules [at common law precluding interest on judgments], and at the same time [to] do justice to the parties. *Interest could only be allowed on the ground of an express or an implied contract to pay it.* In case therefore of an express written contract covering the subject matter, but which was silent as to interest, the express contract could not be enlarged by adding a promise **1092 to pay interest, and there was no ground or right to imply such a promise. But as it was extremely unjust to allow the defendant to have the use of the money loaned without compensation, interest was allowed, in the nature of damages, *for the detention of the money.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

"But it is a perversion or misapplication of this principle to apply it to an express written promise to pay interest after maturity.... [W]here, in a bill or note, interest after maturity is expressly reserved, *it is treated as interest* ... and *never as damages.*" (Citations omitted; emphasis added.) *Hubbard v. Callahan,* supra, 42 Conn. at 529–30.

**\*378** In that connection, we have defined the proper application of General Statutes (Rev. to 1962) § 37–3,[FN10] the predecessor statute to § 37–3a: "The statute is applicable to '*damages* for the detention of money after it becomes payable' in those cases in which the contract makes no provision as to the rate of interest after maturity but is not applicable [to] those in which ... a rate of interest, otherwise lawful, is prescribed as applying from and after the time when the principal becomes payable." (Emphasis added.) *Little v. United National Investors Corp.,* supra, 160 Conn. at 540, 280 A.2d 890. Section 37–3a effected no substantive change of its predecessor and, therefore, no deviation from its application, as defined in *Little,* is necessary.

> FN10. General Statutes (Rev. to 1962) § 37–3 was repealed in 1971. See Public Acts 1971, No. 783, § 2.

### III

The foregoing analysis makes clear that the two primary situations in which postjudgment interest may accrue is either pursuant to an agreement or to a court-ordered award.[FN11] As I noted previously, the majority focuses on the specific relationship between § 52–356d (e) and court-ordered awards of interest as damages under § 37–3a, in large part because the parties in this case have litigated the matter by relying on § 37–3a. In doing so, the majority adopts much of the reasoning from the Appellate Court's decision in *Discover Bank v. Mayer,* supra, 127 Conn.App. at 813, 17 A.3d 80. Although I agree with the majority insofar as it concludes that a party is not entitled to automatic postjudgment interest pursuant to § 37–3a when a court enters an installment payment order, I disagree with the majority's reliance **\*379** on *Discover Bank* to reach this result. In particular, I disagree with certain sweeping language and reasoning in *Discover Bank 's* holding as well as the majority's conclusion that it is wholly applicable to the facts and circumstances of the present case.

> FN11. There are, of course, other specific situations envisioned in title 37 of the General Statutes that involve an award of postjudgment interest. See, e.g., General Statutes § 37–3b (mandatory postjudgment interest in negligence actions). I focus on § 37–1 because it speaks directly to interest on which the parties agree, as opposed to interest mandated by statute or awarded in a court's discretion.

In reaching its conclusion in *Discover Bank,* the Appellate Court determined that (1) the use of the language " '[i]nterest ... shall continue to accrue' " in § 52–356d (e) presupposes an award of interest on a money judgment; id., at 817, 17 A.3d 80; (2) General Statutes § 52–350f, which concerns the enforcement of money judgments, governs the application of § 52–356d (e); see id., at 818, 17 A.3d 80; and (3) because § 52–350f requires that interest in connection with enforcement of a money judgment be imposed "as provided **\*\*1093** by chapter 673,"[FN12] the "interest referred to in § 52–356d (e) is derived from an award of interest pursuant to § 37–3a ... and [a] decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court." (Internal quotation marks omitted.) Id. The Appellate Court thus concluded that "[t]he plain language of § 52–356d (e), as well as its relationship with other statutes, makes clear that a judgment creditor may request postjudgment interest to accrue on a money judgment pursuant to § 37–3a, and that such interest, if awarded, shall continue to accrue on the unpaid portion of a money judgment in cases [in which] installment payments have been ordered by the court." Id., at 818–19, 17 A.3d 80.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN12. Chapter 673 of the General Statutes comprises title 37, of which § 37–3a is a part.

I disagree with this analysis and, therefore, with the majority's partial reliance on it.FN13 First, the interest provision*380 set forth in § 52–350f applies to certain enforcement procedures applicable to money judgments but not necessarily to installment payment orders.FN14 General Statutes § 52–350f specifically provides that a "money judgment may be *enforced, by execution or by foreclosure of a real property lien* ...." An installment payment order is not an execution or foreclosure but "the fixing by the court of a sum to be paid periodically by the judgment debtor until satisfaction of a money judgment." General Statutes § 52–350a (9). This distinction is evident not only from the foregoing language defining an installment payment order but from language in General Statutes § 52–356d (b), which provides that "compliance with [an] installment payment order ... shall stay any property execution or foreclosure pursuant to [the] judgment...." Section 52–356d, by definition, is one of the *post* judgment procedures provided for by the General Statutes. See General Statutes § 52–350a (15) (defining " '[p]ostjudgment procedure' " as "a discovery procedure, a placing of a lien on property, a modification or discharge of a lien, a property execution ... a turnover order, *an installment payment order,* a wage execution, a modification of a wage execution, a compliance order, a protective order or a determination of exemption rights" [emphasis added] ). In other words, when a court enters an installment payment order under § 52–356d, it is effectively providing a court sanctioned delay to the full satisfaction of the judgment by the judgment debtor. Accordingly, the *381 directive in § 52–350f that interest may be imposed on money judgments "as provided by chapter 673" is inapplicable to the present analysis, and the majority's conclusion to the contrary is without support.FN15

FN13. The majority alters some of the lan-

guage that it quotes from *Discover Bank* in order to clarify the nature and scope of the holding in that case. Nevertheless, this partial remedy does not address the other problems present in the court's analysis in *Discover Bank,* which I discuss in the text of this opinion.

FN14. General Statutes § 52–350f provides in relevant part: "The money judgment may be enforced, *by execution or by foreclosure of a real property lien,* to the amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) *interest as provided by chapter 673* on the money judgment and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed pursuant to section 52–400c." (Emphasis added.) As I noted elsewhere in this opinion, chapter 673, which is also title 37 of the General Statutes, provides for a "legal rate" of interest unless otherwise provided by the parties' agreement; General Statutes § 37–1(b); as well as a rate when awarding "damages for the detention of money after it becomes payable." General Statutes § 37–3a (a).

FN15. Even if it is assumed that § 52–350f applies, the court in *Discover Bank* improperly restricts the meaning of the statutory language "interest as provided by chapter 673" to interest under § 37–3a and neglects to address the other statutes within that chapter that provide interest under varying circumstances, in particular, § 37–1. The court in *Discover Bank* does not explain why § 37–3a is exclusively the relevant statute in chapter 673, insofar as the application of § 52–350f is concerned. Only a thorough reading of *Discover Bank* and the briefs filed in connection with that case suggests that the Appellate Court based its reasoning on the parties' reliance

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

on § 37–3a as the only relevant statutory provision providing for postjudgment interest. That may explain the court's somewhat conclusory statement that "[t]he relevant statute in chapter 673 is § 37–3a." *Discover Bank v. Mayer,* supra, 127 Conn.App. at 818, 17 A.3d 80. It does not, however, necessarily lead to the broader holding in *Discover Bank* that "the interest referred to in § 52–356d (e) is derived from an award of interest pursuant to § 37–3a." Id.

In addition to ignoring the plain language of the statutes, the court, in reasoning as it did, also failed to address the distinction between interest pursuant to an agreement and discretionary, court awarded damages. See, e.g., *Middlesex Mutual Assurance Co. v. Walsh,* 218 Conn. 681, 701–702, 590 A.2d 957 (1991) ("[i]n accordance with the permissive language of § 37–3a ... we have stated that [t]he allowance of interest *as an element of damages* is primarily an equitable determination and a matter within the discretion of the trial court" [citation omitted; emphasis added; internal quotation marks omitted] ); *Cecio Bros., Inc. v. Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971) ("[t]he real question in each case is whether the detention of money is or is not wrongful under the circumstances"). Under this interpretation, the statute would provide that "damages awarded on a money judgment under § 37–3a shall continue to accrue...." This is simply not the language of the statute as written. Even if one were to ignore the confusion over interest and damages, such a result cannot be accepted. Rather, the most appropriate reading of § 52–356d (e) would not alter any interest that may attach to a money judgment.

**\*\*1094** IV

The foregoing analysis can be summarized through the following conclusions. First, contracting parties can agree to nonusurious rates of interest on loans of property or money; this interest may accrue before and after the date of maturity of the loan. Unless otherwise provided, the postmaturity interest will continue to accrue on any judgment rendered on the contract or **\*382** note. Second, if contracting parties agree to or contemplate interest but fail to set a rate of interest, § 37–1(a) provides that interest will accrue at the legal rate of 8 percent up to the date of maturity, and § 37–1(b) provides that interest will continue to accrue at the legal rate of 8 percent from the date of maturity. Third, when a party has wrongfully detained money, and the parties have not contemplated interest on the transaction, the court, in its discretion, may award damages in the form of interest, up to a rate of 10 percent on the judgment, under § 37–3a (a).[FN16] Such an award is properly considered damages, and not interest, as evidenced both by the language of the statutes and our precedent.[FN17]

FN16. An example may help illustrate when § 37–3a is clearly applicable. Consider a divorce proceeding in which the wife is required to transfer a liquidated sum of money to the husband as part of the divorce settlement. If the wife fails to effect the transfer within the specified period, and the husband brings an action against her, the husband may seek, and the court may award, damages for the wife's wrongful detention of money, namely, interest at a rate of up to 10 percent on the value of the judgment under § 37–3a (a). See, e.g., *Sosin v. Sosin,* 300 Conn. 205, 210, 14 A.3d 307 (2011) ("[w]e conclude that the Appellate Court properly determined that the trial court's order directing the plaintiff to pay the defendant $3,828,081 did not constitute an improper modification of the original judgment and that the trial court had the discretion to award in-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

terest pursuant to § 37–3a because it reasonably could have concluded that the plaintiff had wrongfully withheld payment of the $3,828,081 to the defendant").

FN17. The distinction between interest and damages is more than semantics. Interest, pursuant to § 37–1 and our case law, as described in this opinion, is not discretionary but, rather, based on the underlying transaction and agreement between the parties. By comparison, an award of damages is inherently discretionary in nature, and, in the case of § 37–3a, requires a court to determine whether there was a wrongful detention of money. See footnote 15 of this opinion.

**\*\*1095** With this understanding of interest on money judgments, it is unquestionably evident that installment payment orders entered pursuant to § 52–356d do not affect the rate of postjudgment interest. The proper analysis for determining whether a judgment carries interest postjudgment is to look for an underlying agreement between the parties and apply the foregoing principles, grounded in our precedent and § 37–1. If the parties **\*383** have contemplated or agreed to have interest continue to accrue after a debt matures, that interest will further continue to accrue postjudgment, at the rate agreed on by the parties or, in the absence of an agreed on rate, the legal rate set forth in § 37–1. If there is no agreement, or the agreement does not contemplate interest, a party may seek an award of interest under § 37–3a in the form of damages. The court, in its discretion, may choose to award interest on the judgment, up to the rate provided by statute. In that connection, the sole purpose of § 52–356d (e) is to direct the court and the parties that, when an installment payment order is entered, postjudgment interest will continue to accrue *only* on the unpaid portion of the money judgment, as diminished by each installment payment. The phrase, "[i]nterest on a money judgment" in § 52–356d (e) refers to the fact that the interest must be awarded on the sum of the money judgment itself, not the individu-

al installments or any other figure. Similarly, "shall continue to accrue ... on such portion of the judgment as remains unpaid" means that the interest must continue to accrue on the balance of the money judgment, not the individual payments. General Statutes § 52–356d (e). Section 52–356d does not otherwise alter or affect the rate of interest on the judgment. Accordingly, I concur in the majority's answer to the first certified question only to the extent that it stands for the proposition that § 52–356d (e) does not itself provide for an award of interest on a judgment.

Conn.,2012.
Ballou v. Law Offices Howard Lee Schiff, P.C.
304 Conn. 348, 39 A.3d 1075

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.